Filed 10/20/22  P. v. Trotter CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>RAMON TROTTER,<br><br>  Defendant and Appellant. | B318152<br><br>(Los Angeles County<br>Super. Ct. No. NA058971) |

APPEAL from an order of the Superior Court of Los Angeles County, Tomson T. Ong, Judge.  Affirmed in part and reversed in part with directions.

Noriega Law Firm and Lauren Noriega, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Charles S. Lee and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 2005 a jury convicted Ramon Trotter of first degree murder, three attempted murders, and related crimes in connection with a shooting spree on the freeway. The jury also found true the special circumstance allegation the murder was committed "by means of discharging a firearm from a motor vehicle, intentionally at another person or persons outside the vehicle with the intent to inflict death." (Pen. Code, § 190.2, subd. (a)(21).)[1] The trial court sentenced Trotter on the murder conviction to a prison term of life without the possibility of parole, and on each of the three attempted murder convictions to life in prison with a minimum term of parole eligibility of seven years. The court also imposed additional terms for various firearm enhancements. We affirmed Trotter's convictions on direct appeal. (*People v. Trotter* (July 25, 2007, B187097) [nonpub. opn.].)

In 2021 Trotter filed a petition under section 1172.6 (former section 1170.95), which, as amended effective January 1, 2022, authorized certain individuals convicted of murder under the felony-murder rule or murder, attempted murder, or voluntary manslaughter under the natural and probable consequences doctrine, to petition for resentencing. After finding Trotter had made a prima facie showing he was eligible for relief, the superior court issued an order to show cause, held an evidentiary hearing, and denied the petition. Trotter argues the court erred in denying his petition because the prosecution failed

---

[1] Statutory references are to the Penal Code.

to prove beyond a reasonable doubt he is ineligible for relief under section 1172.6.  We reverse the superior court's order denying Trotter's petition on one of his three attempted murder convictions, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *A Jury Convicts Trotter of Murder, Attempted Murder, and Other Crimes*

One evening in October 2002, shortly before midnight, Trotter drove a white SUV to a skating rink, where he drove around the parking lot while his passengers spoke to various people there.[2]  As people began to leave after the rink closed, Trotter followed three cars onto the freeway.  The driver of one of the cars was Latisha Stephens; she had a passenger in her car, Leonora Anaya.  The driver of one of the other cars was Kenith Murphy (he had no passengers), and the driver of the third car was Curtis Galbert (also with no passengers).

After a few minutes on the freeway, one of the occupants of Trotter's car fired a shot into the driver's side of Stephens's car.  Anaya, the passenger, heard a gunshot and saw the driver's side window shatter and Stephens slump over the steering wheel.  Anaya saw a light-colored SUV "driving by" at the time of the shooting; after the shooting, she observed the SUV "driving off" in the carpool lane.  Anaya moved onto Stephens's lap to gain control of the car and drove off the freeway at the first exit.

---

[2]    We granted the People's motion to augment the record with the record of Trotter's direct appeal (*People v. Trotter*, *supra*, B187097).  (See Cal. Rules of Court, rule 8.155(a)(1).)

Trotter drove his car up to Murphy's car, "pulled up alongside" it, and slowed down. Two guns appeared out of the windows of Trotter's car, and the occupants started firing into the passenger's side of the second car. Murphy saw muzzle flashes and observed that the driver and the rear passenger wore "skull caps" pulled down to their eyebrows. Murphy heard his window shatter and Trotter's car "speed up" toward the car in front of him.

Trotter pulled his car up "almost parallel" to Galbert's car, and the occupants of Trotter's car fired into the driver's side of Galbert's car. Galbert said Trotter's car "matched his speed" as he heard shots hitting his car. Galbert leaned forward "to stay out of the bullets' path," veered toward the right, and got off the freeway at the first exit. Trotter then drove his car back to Murphy's car, this time along the driver's side, and the occupants fired "a couple of more shots" at Murphy.

Stephens died from a gunshot wound to the head. The other victims survived. At trial, the prosecution introduced evidence Trotter was a gang member.

The jury convicted Trotter on one count of first degree murder (§ 187, subd. (a)), three counts of attempted murder (§§ 187, subd. (a), 664), and three counts of shooting at an occupied motor vehicle (§ 246).[3] On the murder conviction, the jury found true the special circumstance allegation Trotter committed the murder by means of shooting a firearm from a

---

[3]     The jury also convicted Trotter of other crimes in connection with an unrelated incident. (*People v. Trotter* (July 25, 2007, B187097) [nonpub. opn.].) Those convictions are not part of this appeal.

4

motor vehicle with the intent to inflict death (§ 190.2, subd. (a)(21)), the allegation a principal personally and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (d), (e)(1)), and the allegation a principal personally and intentionally used and discharged a firearm (§ 12022.53, subds. (b), (c) & (e)(1)).  On the attempted murder convictions, the jury found true the allegations that the attempted murders were "willful, deliberate, and premeditated" (§ 664, subd. (a)) and that a principal personally and intentionally used and discharged a firearm (§ 12022.53, subds. (b), (c) & (e)(1)).  On the convictions for shooting at an occupied vehicle, the jury found true multiple firearm allegations (§ 12022.53, subds. (b)-(d), (e)(1)).[4]  The jury also found true the allegation Trotter committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members (§ 186.22, subd. (b)(1)(C)).

The trial court sentenced Trotter on his murder conviction to life in prison without the possibility of parole, plus 25 years to life for the firearm enhancement.  The court sentenced Trotter on each of his three attempted murder convictions to a term of life in prison with a minimum parole eligibility of seven years, plus 20 years for the firearm enhancement.  The court also imposed but stayed execution of a term of 15 years to life on each of Trotter's

---

[4]     On one of the convictions for shooting at an occupied vehicle, the jury found true the allegations under section 12022.53, subdivisions (b), (c), (d), and (e)(1), and on the other two convictions for shooting at an occupied vehicle, the jury found true the allegations under section 12022.53, subdivisions (b), (c), and (e)(1).

5

three convictions for shooting at an occupied vehicle.  (*People v. Trotter*, *supra*, B187097.)[5]

B. *Trotter Files a Petition Under Section 1172.6, and the Superior Court Denies It*

On March 18, 2021 Trotter filed a petition for resentencing under section 1172.6.  Trotter alleged that a complaint, information, or indictment "was filed against [him] that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine," that he "was convicted of murder and attempted murder following the [prosecution's] use of [the] felony-murder rule and aiding and abetting [natural and probable consequences theory] at trial," and that he "would not have been convicted by plea or jury of murder or attempted murder today because of the changes to Section[s] 188 and 189 made effective January 1, 2019 by SB 1437."  The People filed an informal response arguing they could "prove beyond a reasonable doubt that . . . Trotter remains guilty of murder . . . under a direct aiding and abetting theory."  The superior court issued an order to show cause.

At the evidentiary hearing the court without objection received the record of Trotter's conviction, including the transcript of the trial.  The People argued Trotter could still be convicted of first degree murder under, among other theories, direct aiding and abetting liability.  The People argued Trotter aided and abetted the murder and attempted murders by driving the SUV in the manner he did, including how he "positioned the

---

[5]    We recite the procedural history from the appellate opinion in Trotter's direct appeal.  (See § 1176.2, subd. (d)(3); *People v. Flores* (2022) 76 Cal.App.5th 974, 988.)

6

car, both in speed and by maneuvering, next to each of the victim's cars." The People also argued the jury's true findings on the special circumstance allegation under section 190.2, subdivision (a)(21), and on the allegation the attempted murders "were deliberate and premeditated" supported the conclusion Trotter "committed first degree murder and remains guilty under the laws as they exist today."

Counsel for Trotter argued the record did not indicate Trotter formed a plan to shoot people or even knew his passengers were armed. According to counsel for Trotter, the jury's true finding on the special circumstance murder was "not dispositive," and the parties had "to relitigate" the finding under *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).[6] Counsel for Trotter also questioned whether the gunfire from the occupant of Trotter's car

---

[6]   In *People v. Banks*, *supra*, 61 Cal.4th 788 the Supreme Court held the special circumstance allegation under section 190.2, subdivision (d), which provides for increased punishment for certain aiders and abettors of first degree felony murder, requires that "[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed, demonstrating reckless indifference to the significant risk of death his or her actions create." (*Id*. at p. 801.) The Supreme Court also held the defendant's "personal involvement must be substantial" and listed several factors courts should consider in determining whether a defendant was a "major participant" in the commission of a crime. (*Id*. at p. 803.) In *People v. Clark*, *supra*, 63 Cal.4th 522, the Supreme Court listed factors to "aid [the] analysis" of whether the defendant "exhibited 'reckless indifference to human life' within the meaning of section 190.2, subdivision (d)." (*Clark*, at p. 618.)

7

caused Stephens's death and claimed a feeding tube caused her blood sugar to drop, which in turn caused her death.[7]

The superior court ruled the cause of Stephens's death was "not really an issue" because "that has been litigated already and that's the law of the case." Instead, the court stated, the determinative issue was "whether or not . . . Trotter is a direct aider and abettor or major participant under any of those theories." The court summarized the facts of the shooting and stated that "the question is whether or not . . . Trotter shared the same kind of intention as the person who shot because he is the driver." The court stated that "the slowing down and speeding up actually does not favor the defense" because "the whole purpose behind it was to align the cars so that the shooting can properly take place." The court also stated Trotter would have pulled over "if, in fact, that was not the intention of . . . Trotter to have the shooting in . . . [Stephens's] car by [his passenger]." The court found that, based on how Trotter drove the SUV and "positioned" the car "as the captain of the ship" to "accomplish its means," Trotter essentially, "except for pulling the trigger, . . . effectuated the shooting." The court found Trotter was "a major participant" and denied his petition. Trotter timely appealed.

---

[7] Stephens's gunshot wound caused significant injury to her brain. She could not breathe or eat on her own; and had a feeding tube, which caused peritonitis.

# DISCUSSION

A. *Senate Bill No. 1437 and the Section 1172.6 Petition Procedure*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) substantially modified the law governing accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843) and significantly narrowing the felony-murder exception to the malice requirement for murder (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957).[8] As amended by Senate Bill No. 1437, section 188, subdivision (a)(3), prohibits imputing malice based solely on an individual's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e). The latter provision requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); the defendant, though not the actual killer, with the intent to kill

---

[8] In October 2021 the Governor signed Senate Bill No. 775 (2021-2022 Reg. Sess.), which amended former section 1170.95, subdivision (a), to allow persons convicted of attempted murder under the natural and probable consequences doctrine to petition for resentencing. (Stats. 2021, ch. 551, § 2; see *People v. Coley* (2022) 77 Cal.App.5th 539, 544.) Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 without changing the text of the statute. (Stats. 2022, ch. 58, § 10; see *People v. Strong*, *supra*, 13 Cal.5th at p. 708, fn. 2.)

assisted in the commission of the murder (§ 189, subd. (e)(2)); or the defendant was a major participant in a felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2," the felony-murder special-circumstance provision. (*Strong*, at p. 708; see *Gentile*, at pp. 842-843.)

Senate Bill No. 1437 also authorized, through section 1172.6, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the superior court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of the changes Senate Bill No. 1437 made to the definitions of the crime. (See *People v. Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis*, *supra*, 11 Cal.5th at p. 957; *People v. Gentile*, *supra*, 10 Cal.5th at p. 843.) As the Supreme Court clarified in *Lewis*, and as amendments by Senate Bill No. 775 made explicit, if a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested. (*Lewis*, at pp. 962-963; see § 1172.6, subds. (b)(1)(A), (3).) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (§ 1172.6, subd. (c).)

Where, as here, the petitioner has made the requisite prima facie showing he or she is entitled to relief under section 1172.6, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subd. (d)(1).) At that hearing the court may

consider evidence "previously admitted at any prior hearing or trial that is admissible under current law," including witness testimony. (§ 1172.6, subd. (d)(3).) The petitioner and the prosecutor may also offer new or additional evidence. (*Ibid.*; see *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

On appeal from an order denying a petition under section 1172.6, we review the trial court's factual findings for substantial evidence. (*People v. Richardson* (2022) 79 Cal.App.5th 1085, 1090; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985.) We "'"examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value that would support a rational trier of fact in finding [the defendant guilty] beyond a reasonable doubt."' [Citation.] Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 298; see *Richardson*, at p. 1090.) "'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 57; see *People v. Nieber* (2022) 82 Cal.App.5th 458, 476.)

11

B.     *Trotter Is Ineligible for Resentencing Relief on His Murder Conviction*

1.     *Relevant Proceedings in the Trial Court*

The trial court instructed the jury with CALJIC No. 3.00, which defined principals and aiders and abettors: "Persons who are involved in committing or attempting to commit a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation, is equally guilty. Principals include: (1) those who directly and actively commit or attempt to commit the act constituting the crime; or (2) those who aid or abet the commission or attempted commission of the crime." The court also instructed the jury on aiding and abetting liability with CALJIC No. 3.01: "A person aids and abets the commission or an attempted commission of a crime when he or she: (1) with knowledge of the unlawful purposes of the perpetrator; and (2) with the intent or purpose of committing or encouraging or facilitating the commission of the crime; and (3) by act or advice, aids, promotes, encourages, or instigates the commission of the crime. . . ."

The court instructed the jury on the natural and probable consequences doctrine with CALJIC No. 3.02. The court told the jurors that, to find Trotter guilty of murder, attempted murder, or shooting at an occupied motor vehicle, they had to find Trotter aided and abetted the commission of the crime of willful, unlawful, malicious discharge of a firearm from a motor vehicle (former § 12034, subd. (d)) or driving a vehicle and knowingly permitting any other person to discharge a firearm from a vehicle (former § 12034, subd. (b)), and that the murder, attempted murder, or shooting at an occupied motor vehicle was a natural

12

and probable consequence of the commission of either target crime.[9]

The court instructed the jury on the elements of murder (CALJIC No. 8.10), the definition of malice (CALJIC No. 8.11), the elements of murder perpetrated by means of discharging a firearm from a motor vehicle with the intent to inflict death (CALJIC No. 8.25.1), the elements of attempted murder (CALJIC No. 8.66), and the requirements for a true finding on the allegation the attempted murder "was willful, deliberate, and premeditated" (CALJIC No. 8.67). And the court gave CALJIC No. 8.80.1, which defined the special circumstance allegation under section 190.2, subdivision (a)(21): "If you find the defendant in this case guilty of murder of the first degree, you must then determine if the following . . . circumstance is true or not true: that the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person or persons outside the vehicle with the intent to inflict death. The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, counseled, commanded, induced, solicited, requested, or assisted any actor in the commission of

---

[9]    In 2010 the Legislature renumbered section 12034 to section 26100. (Stats. 2010, ch. 711, § 4, operative Jan. 1, 2012; see *People v. Rodarte* (2014) 223 Cal.App.4th 1158, 1160, fn. 2.)

the murder in the first degree." The court did not instruct on the felony-murder rule.

After discussing the evidence Trotter was guilty of attempted murder and shooting at an occupied vehicle, the prosecutor stated: "We've talked about attempted murder. We've talked about shooting at an occupied car. We're about to talk about murder. The defendant does not have to have an intent to kill, OK. He doesn't have to have the intent to kill. It's just the people who are shooting from the car that have to have the intention." Counsel for Trotter objected, "Misstates the law." The court responded, "It's overruled. The jury will take the law from the jury instructions."

The prosecutor continued: "He doesn't have to have an intent to kill. It's just the shooters who do. He does not have to have . . . premeditated or deliberated. It's the shooters who have had to have premeditated and deliberated in terms of the attempt to kill. So again, the natural and probable consequences, whatever the shooter did, the defendant is equally guilty."

The prosecutor discussed the cause of death, the requirements for the jury to find the perpetrators acted with malice, and the elements of murder by means of discharging a firearm from a vehicle with the intent to kill. The prosecutor explained the special circumstance allegation under section 190.2, subdivision (a)(21): "You also have an allegation, a special circumstance, in this case which you'll need to make a decision on which will also be on the verdict form. . . . The special circumstance is also drive-by murder. OK. It's the same. It's the same piece of law in terms of what the special circumstance involves: shooting from a vehicle at someone outside of the vehicle with the intent to kill. For the murder, as we've talked

14

about with aiding and abetting and the natural and probable consequences theory, the defendant does not have to have the intent to kill, right?  He can aid and abet in the shooting from the vehicle, and then whatever the shooters do, he's responsible for.  It's different with a special circumstance.  With a special circumstance, to find the special circumstance to be true, you must decide that the defendant had the intent to kill when he aided and abetted the shooters in the drive-by murder.  OK.  So it adds that extra element of, did the defendant, in fact, intend to kill when he is positioning his vehicle, the [SUV], alongside these various victims' vehicles on the freeway?"

The prosecutor argued:  "And certainly, we have evidence of that.  If you look at the driving, the pattern of driving that's described by the victims, OK.  With respect to Miss Anaya, she simply says that the vehicle comes by in the carpool lane and Miss Stephens is shot.  But with respect to Mr. Murphy, we know that he says that the [SUV] comes up on the passenger side and actually comes up alongside him.  Who is responsible for that?  The driver.  Right.   The driver has ultimate control of this vehicle.  He's responsible for how and where the vehicle is positioned and he's responsible for how the shooters are positioned, so to speak, with respect to the victims' vehicles."  The prosecutor continued to describe Trotter's driving pattern with respect to Galbert's car and stated, "Does [Trotter] have the intent to kill during the drive-by?  Yes, in terms of when he's positioning his vehicle alongside of these victims' vehicles, he's in control.  He's in control.  So, the special circumstance is, in fact, true."

2.    *The Jury's True Finding on the Special Circumstance Allegation Precludes Trotter from Relief on His Murder Conviction*

The jury's true finding under section 190.2, subdivision (a)(21), that Trotter aided and abetted Stephens's murder by means of discharging a firearm from a motor vehicle "with the intent to inflict death" necessarily means the jury found Trotter had the intent to kill. The jury instruction and the prosecutor's argument made clear that, to find the special circumstance allegation true, the jury had to find that Trotter (not just the shooters) had the intent to kill when he aided and abetted the shooters in committing murder. As discussed, Trotter is not eligible for relief under section 1172.6 if he acted with the intent to kill. (§ 189, subd. (e); see *People v. Strong*, *supra*, 13 Cal.5th at p. 710 ["Senate Bill 1437 relief is unavailable if the defendant was either the actual killer, acted with the intent to kill, or 'was a major participant in the underlying felony and acted with reckless indifference to human life.'"]; *Gentile*, *supra*, 10 Cal.5th at p. 848 ["'Senate Bill 1437 does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.'"].) By finding Trotter had the intent to kill, the jury in effect found Trotter guilty of murder as a direct aider and abettor. (Cf. *People v. Medrano* (2021) 68 Cal.App.5th 177, 183-184 ["By convicting appellant of conspiracy to commit first degree murder," the jury "in effect found that appellant was a direct aider and abettor of the killings" because the jury instruction required the jury to find he acted "'with the specific intent to agree to commit . . . first degree murder and with the further specific intent to commit such offense.'"].)

16

The jury's true finding on the drive-by murder special circumstance allegation means the jury could not have convicted Trotter of murder under the natural and probable consequences doctrine. As discussed, by finding Trotter had the intent to kill, the jury did not impute malice to Trotter and convict him under a no-longer valid theory. Therefore, Trotter can "presently be convicted of murder" (§1172.6, subd. (a)(3)), notwithstanding changes to sections 188 or 189. (See *People v. Mancilla* (2021) 67 Cal.App.5th 854, 864, 867-868 [defendant was "ineligible for relief under section [1172.6] as a matter of law" because the jury did not convict him under a theory of liability affected by the 2019 amendments to the law of murder].)

Trotter mistakenly relies on "recent Supreme Court rulings" that he says (without naming them) "detail how and why special circumstance findings predating *Banks* and *Clark* do not result in ineligibility for relief" under section 1172.6. *Banks* and *Clark*, however, concerned the felony-murder rule, not the drive-by murder special circumstance finding under section 190.2, subdivision (a)(21). The Supreme Court in *Banks* and *Clark* clarified the requirements for a finding under section 190.2, subdivision (d), the provision that prescribes increased punishment (death or life imprisonment without the possibility of parole) for a defendant who aids and abets the commission of certain felonies that result in death.[10] (See *Strong*, *supra*,

_____

[10] Section 190.2, subdivision (d), provides: "Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person

13 Cal.5th at p. 721 [*Banks* "substantially clarified the law surrounding major participant findings," and *Clark* "substantially clarified the relevant considerations for determining whether a defendant has acted with reckless indifference to human life"].) As discussed, the trial court did not instruct the jury on the felony-murder rule, and the People did not allege or argue to the jury that Trotter committed one of the enumerated felonies under section 190.2, subdivision (a)(17). (See *Gentile*, *supra*, 10 Cal.5th at p. 848 [felony-murder rule does not apply where the People do not charge the defendant with "a predicate felony that can serve as the basis for felony murder"]; *People v. Medrano*, *supra*, 68 Cal.App.5th at p. 182 ["'A felony murder arises when a killing occurs in the course of the commission of one of the predicate felonies enumerated in . . . section 189.'"].)

Trotter also argues the prosecutor's closing argument "repeatedly reminded" the jury that his "intent was irrelevant." This much is true: The prosecutor discussed the natural and probable consequences theory in her closing argument and told

---

or persons, and who is found guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4." Section 190.2, subdivision (a)(17), provides for increased punishment where the defendant commits murder while he or she "was engaged in, or was an accomplice in, the commission of, attempted commission of, or the immediate flight after committing, or attempting to commit" certain enumerated felonies.

18

the jury that under that theory Trotter did "not have to have the intent to kill," which was consistent with CALJIC No. 3.02. And the trial court, after overruling counsel for Trotter's objection that the prosecutor had misstated the law, instructed the jury to "take the law from the jury instructions." (See *People v. Dalton* (2019) 7 Cal.5th 166, 260 ["'We presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.'"]; *People v. Centeno* (2014) 60 Cal.4th 659, 676 ["'When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former.'"]; *People v. Meneses* (2019) 41 Cal.App.5th 63, 75 ["We presume the jury followed the court's instructions, rather than any conflicting comment by counsel, in reaching a verdict."].)

Significantly, however, the prosecutor did not tell the jury that, for the drive-by murder special circumstance, the jury did not need to find Trotter had the intent to kill. In fact, the prosecutor stated the opposite: To find the special circumstance allegation true, the jury had to "decide that [Trotter] had the intent to kill when he aided and abetted the shooters in the drive-by murder." The prosecutor emphasized the special circumstance allegation "adds that extra element" that Trotter had the intent to kill when he positioned his car next to each victim on the freeway. Thus, even though the prosecutor discussed the natural and probable consequences theory, her argument correctly distinguished the instruction on that theory from the instruction on the special circumstance allegation, which required the jury to find Trotter had the intent to kill when he aided and abetted the murder of Stephens. (See *People v. Sanchez* (2001) 26 Cal.4th

19

834, 852 ["Jurors are presumed able to understand and correlate instructions."].)

    C.    *Substantial Evidence Supported the Superior Court's Finding Trotter Aided and Abetted the Attempted Murders of Murphy and Galbert*

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*People v. Canizales* (2019) 7 Cal.5th 591, 602; see *People v. Booker* (2011) 51 Cal.4th 141, 177-178; *People v. Cardenas* (2020) 53 Cal.App.5th 102, 111.) "Direct evidence of intent to kill is rare, and ordinarily the intent to kill must be inferred from the statements and actions of the defendant and the circumstances surrounding the crime." (*Canizales*, at p. 602; see *People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 ["'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.'"].)

"'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime."' [Citation.] '[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must

20

intend to kill.'" (*People v. Nguyen, supra*, 61 Cal.4th at p. 1054; accord, *People v. Offley* (2020) 48 Cal.App.5th 588, 596; *People v. Pettie* (2017) 16 Cal.App.5th 23, 52.)

"'Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.'" (*People v. Nguyen, supra*, 61 Cal.4th at p. 1054; see *People v. Johnson* (2019) 32 Cal.App.5th 26, 60.) The jury may also consider "'flight'" in determining "whether a defendant aided and abetted in the commission of the crime." (*People v. Lara* (2017) 9 Cal.App.5th 296, 322.)

As the superior court found, Trotter, the "captain" of the SUV, maneuvered his car on the freeway to enable his passengers to take clear shots at each of the drivers in succession. Trotter followed the caravan of three cars from the skating rink onto the freeway. He drove his car at a precise speed to allow the shooter to hit Stephens in the head with one shot. He drove alongside the passenger side of Murphy's car to allow the shooters to fire at Murphy and drove parallel to Galbert's car to allow the shooters to fire 13 bullets into the driver's door. And, for good measure, Trotter steered his car back toward Murphy's car, this time on the driver's side, to give the shooters a second opportunity to kill Murphy. And as he drove and positioned his car so that his confederates could line up their shots, Trotter (along with one of the shooters) wore a skull cap pulled down to the eyebrows, presumably to prevent witnesses from identifying him, which further supported the conclusion Trotter knew his passengers planned to commit the shooting. (See *In re Jose D.* (1990) 219 Cal.App.3d 582, 585 [substantial evidence supported the court's finding the defendant aided and abetted attempted

21

murder where the defendant "deliberately maneuvered the car" near the victims as his passenger pointed a gun at them, and the defendant parked the car in front of a house where the passenger fired at another victim]; see also *People v. Nguyen, supra*, 61 Cal.4th at pp. 1053-1055 [substantial evidence supported the jury's finding the defendant aided and abetted attempted murder where the defendant assisted the shooter by "spotting potential targets" from the back seat of the car as a rival gang member drove by]; *People v. Swanson-Birabent* (2003) 114 Cal.App.4th 733, 743-744 ["'one who is present . . . to take charge of an automobile and to keep the engine running, or to drive the "getaway" car and to give direct aid to others in making their escape from the scene of the crime, is a principal in the crime committed'"].)

Finally, after the shooter fired the first shot, Trotter did not pull over or render aid to Stephens; instead, Trotter pulled up alongside the next car so that the shooters could try to kill the driver. Nor did Trotter pull over or render aid to Murphy after the shooters attempted to kill him; instead, consistent with sharing the shooters' intent to kill, Trotter placed his car parallel to the next victim's car. And after the third shooting, Trotter did not pull over or render aid to Galbert but (again) attempted to assist the shooters in killing Murphy. Trotter's actions before, during, and after each shooting was substantial evidence that he knew the shooters aimed to kill and that, to facilitate each attempted murder, he aligned his car with each target to help the shooters to achieve their objectives. As the superior court observed, except for pulling the trigger, Trotter "effectuated" the shooting. (See *People v. Abelino* (2021) 62 Cal.App.5th 563, 578 [presence at the scene of the crime and failure to take steps to

prevent a crime may be "considered together with other evidence in determining that a person is an aider and abettor"]; *People v. Nguyen* (1993) 21 Cal.App.4th 518, 529-530 [same]; see also *People v. Garcia* (2008) 168 Cal.App.4th 261, 274 ["a defendant's conduct after a crime, including flight, is a relevant factor in determining his liability for aiding and abetting a crime"].)

Citing Murphy's testimony that the shooters "shot his vehicle while approaching from behind" and that the SUV "sped past him immediately after the shots shattered his back window," Trotter argues he "drove to purposely place distance between the vehicles after hearing the gunshots, and that any 'maneuvering' was for the purpose of getting his vehicle away from other vehicles." The record does not support Trotter's characterization of Murphy's testimony. Murphy testified that, after his rear windshield shattered, he saw Trotter's car "coming up" on the driver's side and slowing down when it reached the side of his car, at which point he saw two guns coming out of the windows and the muzzle flashes from the shots. That the shooters also fired at Murphy's car from behind did not undermine the court's finding that Trotter's driving pattern demonstrated he shared the shooters' intent to kill. It simply showed the shooters attempted to kill Murphy from the rear, and when their first attempt failed, Trotter skillfully placed his car next to Murphy's to give the shooters a second opportunity to kill him. The evidence did show, as Trotter asserts, that he tried to distance himself from each victim's car after the shooters fired their shots, but not for the innocent reason he suggests. The evidence showed Trotter sped off either to position his car alongside the next victim's vehicle or to flee when the shooters had finished shooting. And, of course, the superior court resolved any potential conflict in the evidence

23

in favor of the People.  (See *People v. Sifuentes* (2022) 83 Cal.App.5th 217, 233 [on appeal from an order denying a petition for resentencing under section 1172.6, "'"[c]onflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends"'"].)

Trotter also argues the People "offered no evidence demonstrating [he] had knowledge of any passenger's intent or plan to commit any crime."  As discussed, however, the People may establish intent and knowledge with circumstantial evidence.  (*People v. Nguyen*, *supra*, 61 Cal.4th at p. 1054; see *People v. White* (2014) 230 Cal.App.4th 305, 319 [in determining the state of mind of the aider and abettor, the "existence of the requisite knowledge may be established by circumstantial evidence"].)  Trotter's actions in following the three cars onto the freeway from the skating rink, positioning his car to enable each shooting to take place, and fleeing the scene of the crime instead of rendering aid was substantial evidence that he knew his passengers intended to shoot people on the freeway and that he shared their intent to kill Murphy and Galbert.

> **D.**     *Substantial Evidence Did Not Support the Court's Finding Trotter Aided and Abetted the Attempted Murder of Anaya*

"'"[G]uilt of attempted murder must be judged separately as to each alleged victim."'"  (*People v. Perez* (2010) 50 Cal.4th 222, 230; see *People v. Canizales*, *supra*, 7 Cal.5th at p. 602 ["When a single act is charged as an attempt on the lives of two or more

24

persons, the intent to kill element must be examined independently as to each alleged attempted murder victim."].) An "intent to kill cannot be 'transferred' from one attempted murder victim to another under the transferred intent doctrine." (*Canizales*, at p. 602; see *People v. Windfield* (2021) 59 Cal.App.5th 496, 514.)

The shooter in Trotter's SUV fired a single shot at Stephens, hitting her in the head. However, aside from this evidence, and the evidence Trotter placed his car next to Stephens's car to enable the shooter to take the shot, there was no evidence either the shooter or Trotter took any actions suggesting Trotter intended to aid and abet the shooter in killing the passenger in Stephens's car, Anaya. The shooter did not fire a second shot at Stephens's car, and Trotter did not maneuver his car in a way to suggest he had any intent for the shooter to kill both Stephens and Anaya with one bullet. The evidence does suggest Trotter had a conscious disregard for the consequences of killing Stephens, the driver, but such an inference cannot support a conviction for attempted murder of her passenger. (See *People v. Stone* (2009) 46 Cal.4th 131, 139-140 ["[i]mplied malice—a conscious disregard for life—suffices for murder but not attempted murder," and "transferred intent does not apply to attempted murder"]; *People v. Bland* (2002) 28 Cal.4th 313, 327 [same].) Substantial evidence did not support the superior court's finding Trotter intended to kill Anaya. (See *People v. Perez, supra*, 50 Cal.4th at p. 231 [substantial evidence did not support convictions for attempted murder where the defendant fired a single bullet at a group of peace officers, and there was no evidence the defendant "specifically intended to kill two or more persons with the single shot"]; cf. *People v. Smith* (2005)

25

37 Cal.4th 733, 743 [substantial evidence supported the jury's finding the "defendant acted with intent to kill *both* victims when he fired off a single round at them from close range, each of whom he knew was directly in his line of fire"]; *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 691 ["Where a defendant fires [one shot] at two officers, one of whom is crouched in front of the other, the defendant endangers the lives of both officers and a reasonable jury could infer from this that the defendant intended to kill both."].)  Because the People did not prove beyond a reasonable doubt Trotter could still be convicted of the attempted murder of Anaya, Trotter is entitled to relief under section 1172.6.  (See *People v. Howard* (2020) 50 Cal.App.5th 727, 736.)

The People argue there "is no evidence to suggest that [Trotter] acted with 'intent to kill' as to Stephens, but that he harbored a different mental state as to Stephens's passenger."  Perhaps, but Trotter did not have the burden to prove he did not intend to kill Anaya; the People had the burden to show Trotter did.  (See § 1172.6, subd. (d)(3); *People v. Lewis*, *supra*, 11 Cal.5th at p. 960.)

### E.     *Any Procedural Errors Were Harmless*

Trotter argues there were several procedural errors at the evidentiary hearing:  The court "inexplicably found that [he] was a major participant"; the court "based its ruling, denying relief, upon its own memory of the case"; and the prosecutor made arguments "without citing to the record."  While the superior court's finding Trotter was a major participant was inexplicable,[11]

---

[11]     Whether Trotter was a major participant who acted with reckless indifference to human life is irrelevant because he was

Trotter does not explain how the other two purported errors were, in fact, errors. For example, Trotter does not argue that the court's recollection of the relevant facts was inaccurate, nor does he identify any statutory or case authority requiring the prosecutor to provide citations to the reporter's transcript.[12] (See *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 363 [if a party's briefs "do not provide legal argument and citation to authority on" an issue, the issue is forfeited]; *People v. Flint* (2018) 22 Cal.App.5th 983, 995, fn. 11 [failure to support an argument with "independent authority or analysis" forfeits the argument]. Indeed, the Legislature's decision to require a petitioner to file a petition under section 1172.6 "with the court that sentenced the petitioner" (§1172.5, subd. (b)(1)) suggests the court's prior experience with the case is relevant.

_____

not convicted of felony murder. The court's error, however, was harmless because the court found Trotter shared the shooters' intent to kill and, as discussed, could still be convicted as an aider and abettor of the attempted murders of Murphy and Galbert. (See *People v. Estrada* (2022) 77 Cal.App.5th 941, 949 [where "the record shows [the defendant] was convicted as a direct aider and abettor," the defendant is "ineligible for section [1172.6] relief"]; see also *People v. Turner* (2020) 10 Cal.5th 786, 807 ["'"[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion."'"].)

[12] Trotter's related contention that the prosecutor's "argument was based upon assumption and facts not contained in the trial record" is meritless because the prosecutor referred to the trial evidence and discussed the testimony of some of the witnesses.

In any event, any such error by the superior court or claimed misconduct by the prosecutor was harmless.  (See *People v. Lewis*, *supra*, 11 Cal.5th at p. 973 ["Typically, when an 'error is purely one of state law, the [*People v. Watson* (1956) 46 Cal.2d 818] harmless error test applies.'"]; *People v. Mancilla*, *supra*, 67 Cal.App.5th at p. 864 [same].)  The defendant must "'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.'"  (*Lewis*, at p. 974, see *Mancilla*, at p. 864.)  The admissible evidence (§ 1172.6, subd. (d)(3)), which includes the reporter's transcript of the trial (see *People v. Owens* (2022) 78 Cal.App.5th 1015, 1020; *People v. Clements*, *supra*, 75 Cal.App.5th at p. 293), establishes Trotter could still be convicted of first degree murder and the attempted murders of Murphy and Galbert.  Thus, even if the court applied the wrong legal analysis (i.e., the analysis for a defendant convicted of felony murder), improperly relied on its memory of the trial, or erred in allowing the prosecutor to make an argument without citing the record, Trotter cannot demonstrate a reasonable probability that, in the absence of any such errors, the court would have granted him relief on the murder conviction and two of the three attempted murder convictions.  (See *People v. Garcia* (2022) 82 Cal.App.5th 956, 973 [because the defendant "was convicted on a murder theory that remains valid after Senate Bill No. 1437," the "trial court's purported failure to apply the proper standard of proof in denying defendant's petition for resentencing was harmless"]; *People v. Garrison* (2021) 73 Cal.App.5th 735, 745 [same]; *People v. Myles* (2021) 69 Cal.App.5th 688, 707, 711 [any error in admitting the parole assessment report and transcript of the parole hearing was harmless because other documents provided

28

"strong circumstantial evidence that defendant acted alone" in committing the murder].)

## DISPOSITION

The order denying Trotter's petition under section 1172.6 for resentencing on his conviction for the attempted murder of Anaya is reversed, and the judgment is modified to vacate his conviction and sentence on that count. In all other respects, the order denying Trotter's petition is affirmed.


SEGAL, J.


We concur:



PERLUSS, P. J.



FEUER, J.

29